IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ERIN MARTIN,

    Plaintiff,

vs.                                                      No. 14-cv-00275-JCH/SMV

I-FLOW, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 10, 2014, Defendant I-Flow, LLC ("I-Flow") filed a "Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike and Supporting Memorandum of Law" (ECF No. 14). Defendant seeks an order striking Plaintiff's request for punitive damages because it is insufficiently pled. The Court, having considered the pleadings, motion, briefs, and applicable law, concludes that the motion to dismiss should be denied.

**I.   FACTUAL BACKGROUND**

In December 2005, Plaintiff underwent arthroscopic surgery to her left ankle in Las Cruces, New Mexico, at which time a "pain pump" was implanted into her ankle by her surgeon to inject pain relief medication directly into her ankle joint. First Am. Compl. ¶ 5, ECF No. 1-4. Later that same month, Plaintiff had surgery for a ligament repair to her left ankle during which another pain pump was implanted into her ankle joint. *Id.* ¶ 6. Defendant I-Flow designed, manufactured, marketed, distributed, and/or sold both pain pumps implanted into Plaintiff. *See id.* ¶¶ 5-6. These "On Q Pain Buster" pain pumps designed and manufactured by I-Flow deliver, via catheter, continuous doses of pain relief medication, common anesthesia such as lidocaine

and/or Marcaine, with or without epinephrine, directly into the operative site for 48 hours or more immediately following surgery. *Id.* ¶¶ 8-9.

The continuous injection of such medications over time directly in a joint, however, causes serious and permanent damages to the cartilage in the joint, resulting in a condition called "chondrolysis." *Id.* ¶ 9. Chondrolysis is the complete or nearly complete loss of cartilage in a joint that is irreversible, disabling, and extremely painful. *Id.* As a result of the two pain pumps inserted during the surgeries, Plaintiff suffered cartilage loss and chondrolysis. Id. ¶ 10. Plaintiff has already undergone surgery, and will require additional surgery, as a result of her condition. *Id.* ¶ 11.

Plaintiff filed a complaint for damages against I-Flow alleging claims for strict liability and negligence arising out of Defendant's alleged failure to warn of the dangers of using its pain pump in this "off label" manner in the joint space. *See id.* ¶¶ 16-22.[1] Defendant has moved to strike Plaintiff's request for punitive damages on the grounds that Plaintiff has insufficiently pled facts to show that Defendant knew of the alleged risk of chondrolysis prior to Plaintiff's December 2005 surgery. *See* Def.'s Mot. to Dismiss 3-8, ECF No. 14. Plaintiff opposes the motion, arguing that she has sufficiently stated a claim for punitive damages because the facts alleged show that Defendant showed utter disregard for the safety of others. Pl.'s Resp. 3, ECF No. 16. Plaintiff contends that Defendant acted recklessly and wantonly, grounds for a jury to award punitive damages. *See id.*

## II.    STANDARD

To state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This means that the

---

[1] Plaintiff also asserted a third cause of action for Breach of Warranty that has been dismissed. *See* Rule 41(a)(1)(A)(ii) Stipulated Voluntary Dismissal of Pl.'s Breach of Warranty Claims – Third Cause of Action, ECF No. 17.

plaintiff must allege enough factual matter, taken as true, to make his 'claim to relief . . . plausible on its face.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)). A pleading that offers mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" does not meet Rule 8's notice pleading and will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). This plausibility standard does not require evidence of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.  LEGAL ANALYSIS

"To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ , 881 P.2d 11 (internal citation omitted). *See also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1250 (10th Cir. 2000) ("The defendant must act knowingly, displaying an 'evil motive' or culpable mental state."); *Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 58, 53 P.3d 398 ("Because the purpose of punitive damages is to punish a wrongdoer, a wrongdoer must have a culpable mental state to be liable for punitive damages."). In assessing a wrongdoer's conduct for punitive damages purposes, the conduct must be viewed in light of the risks arising from the activity. *Clay*, 1994-NMSC-080, ¶ 13. As the risk increases, "conduct that amounts to a breach of duty is more likely to demonstrate a culpable mental state." *Id.*  Reckless conduct "is the intentional doing of an act with utter indifference to the consequences." N.M. UJI 13-1827; *Couch*, 2002-NMCA-084, ¶ 58.

"Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's [rights] [safety]." N.M. UJI 13-1827.

A defendant's conscious disregard for other's personal safety may give rise to punitive damages, although unsafe features alone do not necessarily give rise to an inference that a defendant recklessly or consciously disregarded safety. *See Couch*, 2002-NMCA-084, ¶ 60. In a product liability case, a defendant unaware of a product's defect and unaware of the serious danger or substantial harm posed by that defect does not act "consciously" or "recklessly" in disregard for another party's rights. *See Rimbert v. Eli Lilly and Co.*, 577 F.Supp.2d 1174, 1212 (D. N.M. 2008).

In this case, Plaintiff has alleged, among other things, that Defendant "failed to investigate properly and report to the FDA *once it began receiving reports of dozens of patients who had allegedly suffered injury to their cartilage following use of pain pumps in their joints*." First Am. Compl ¶ 15(d), ECF No. 1-4 (emphasis added). Further, Plaintiff asserts: "Defendant failed to disclose adequately the risk of serious and permanent injury to the cartilage associated with the use of pain pumps in the joint space for a prolonged period of time *after Defendant became aware of the risk*." *Id.* ¶ 15(f) (emphasis added). These factual allegations suggest that Defendant knew of the risk of injury in using its pain pump in the joint space, and thus, they are sufficient to state a plausible claim for relief above the speculative level to overcome the motion to dismiss. *Cf. Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶¶ 37-50, 899 P.2d 576 (holding that substantial evidence supported punitive damages claim where defendant, knowing of risks of blindness attending a specific use of its product, failed to warn surgeons and patients of well-documented risks of eye-implantation procedure).[2]

---

[2] Defendant relies on the case of *Healy v. I-Flow, LLC*, 853 F.Supp.2d 868 (D. Minn. 2012), in which the district court denied the plaintiff's motion for leave to amend the complaint to add a claim for punitive damages. In

4

**IT IS THEREFORE ORDERED** that Defendant I-Flow, LLC's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike and Supporting Memorandum of Law (**ECF No. 14**) is **DENIED**.

_____
**UNITED STATES DISTRICT COURT**

---

*Healy*, the court applied Minnesota law, which required a plaintiff to file one or more affidavits showing a factual basis for a claim of punitive damages, and required the court to perform a gatekeeping role to determine, after a hearing, whether there is prima facie evidence to support a punitive damages claim. *See id.* at 873. New Mexico does not employ such a procedure and this Court must at this stage in the pleadings rely on the factual allegations of Plaintiff's complaint. The Court thus cannot consider evidence regarding the FDA's approval process of the I-Flow pump or what information was known or not known by I-Flow that is not alleged in the complaint. This Court's consideration of *Healey* and whether the evidence actually supports Plaintiff's allegations is more appropriate at the summary judgment stage. *Cf. Healey*, 853 F.Supp.2d at 879 (concluding "there is nothing in the *documents or testimony submitted by Plaintiff* about I–Flow's § 510(k) application process that shows that I–Flow knew that there was any risk that use of the I–Flow pain pump in the intra-articular space would cause debilitating cartilage destruction") (emphasis added); *Prather v. Abbott Labs*, 960 F.Supp.2d 700, 705 (W.D. Ky 2013) (dismissing products liability claims arising from pain pump on summary judgment); *Rodriguez v. Stryker Corp.*, No. 2:08-0124, 2011 WL 31462, *1 (M.D. Tenn. Jan. 5, 2011) (granting summary judgment to defendant on products liability case involving pain pump); *Phillippi v. Stryker Corp.*, No. 2:08-CV-02445-JAM-KJN, 2010 WL 2650596, *1 (E.D. Cal. July 1, 2010) (same).